Joseph **PORETTO**; Joseph Marcello, Jr.;
Natural persons d/b/a Nola Printing
Company, Appellants,

v.

Chester A. **USEY**, Director of Internal
Revenue, Appellee.

No. 18645.

United States Court of Appeals
Fifth Circuit.

Oct. 20, 1961.

DeQuincy V. Sutton, Meridian, Miss., Hilary J. Gaudin, New Orleans, La., for appellants.

Nicholas J. Gagliano, Asst. U. S. Atty., New Orleans, La., William A. Friedlander, Atty., Dept. of Justice, Charles K. Rice, Asst. Atty. Gen., Dept. of Justice, Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., M. Hepburn Many, U. S. Atty., New Orleans, La., Abbott M. Sellers, Acting Asst. Atty. Gen., Francis G. Weller, Asst. U. S. Atty., New Orleans, La., for appellee.

Before TUTTLE, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This case concerns the procedure available to a taxpayer to contest an administrative determination of the District Director of the Internal Revenue Service involving an excise tax assessment carrying a penalty. The taxpayers appeal the dismissal of their action for an abatement of the taxes assessed against them, asserting that they have been denied their day in court. We affirm the dismissal below. The appellants must seek vindication of their

rights through the regular "pay and sue" procedure established by Section 7422 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7422.

Joseph Poretto and Joseph Marcello, Jr. operate a business in Jefferson Parish, Louisiana, under the name of "Nola Printing Company". They characterize it as a printing and news service; the District Director of Internal Revenue characterizes it as a "wire service". Such companies furnish up to the minute information to their customers. The company or furnisher of the information is required to collect certain taxes levied against the users or customers.

The source of this litigation is a dispute whether the Nola Printing Company comes within the statutory definition of a taxable service. If so, appellants were required by Sections 4251 and 4291 of the Internal Revenue Code of 1954 (Sections 3465 and 3467(b) of the 1939 Code) to collect certain excise taxes from their customers. This the taxpayers did for part of 1952 and for 1953. On the advice of new tax advisors, they did not file excise tax returns for 1954 or the following years. In 1955 the District Director called attention to their failure to file. The taxpayers then notified the Director that they did not conduct a taxable service. Shortly after, they filed a claim for refund of the taxes paid for 1952 and 1953; the claim was rejected because of the Statute of Limitations. July 22, 1960 the District Director notified the taxpayers that their business constituted a communication facility subject to the provisions of Section 4251, that they had willfully failed to collect the excise taxes for the periods ending February 28, 1954 through December 31, 1958, as required of them by Section 4291, and that they owed a penalty of $58,979 under Section 6672. The Director notified the taxpayers that he had enrolled liens against their property and had levied on their banking facilities.

August 5, 1960 the taxpayers filed a suit in the District Court for the Eastern District of Louisiana entitled, "Petition for Order to Show Cause why Federal Excise Tax Penalty Demand and Assessment should not be Abated and Suppressed". The Director moved to dismiss the petition on the ground that the district court has no jurisdiction to entertain a summary proceeding or to give equitable relief against the assessment or collection of taxes when there is an adequate remedy at law. The trial judge granted the motion for dismissal. The taxpayers appealed.

The taxpayers contend that under Section 6404 the District Director is obliged to abate an unlawful assessment and that his refusal to do so gives them a right to sue for a judicial determination of the validity of the administrative action. They support this contention with a variety of arguments. They argue that since the tax is a penalty it requires a finding of willfulness. They say that there is no other avenue open to them to contest the tax; without the relief sought they will be without their day in court and will be deprived of property without due process of law. They assert that since the penalty is against them (not the customers) for not having collected and paid over a tax owed by other taxpayers, it is very doubtful that they would be entitled to obtained recourse under the normal "pay and sue" procedure of Section 7422. They urge that immediate relief is necessary, because they will not have any recourse against their customers for these taxes and because they will not be able to deduct the penalty taxes as a business expense.

This case is not as unusual as the appellants seem to think. The governmental necessity of administering the assessment and collection of taxes in an orderly manner sets a tax claim of the sovereign apart from ordinary claims of the government and apart from claims of private litigants. Nevertheless, there are established procedures for settling tax disputes with special immediate relief in the proper case.

The appellants misconceive both the availability of relief under the usual procedures and the nature of the abatement procedures of Section 6404. It is clear that the appellants will be able to test the merits of the tax in a suit for a refund. Section 7422 specifically includes within its coverage suits for recovery of "any penalty claimed to have been collected without authority." In Wilmette Park District v. Campbell, 1949, 338 U.S. 411, 70 S.Ct. 195, 94 L.Ed. 205, the Supreme Court expressly held that where a party has paid a penalty for the failure to collect and pay over taxes it has standing to sue for a refund. Not only is this means of redress available; it is mandatory and exclusive under a long line of cases. These hold that the system prescribed by the United States for the collection of taxes by stringent measures, with appeals to specified tribunals to recover moneys illegally exacted, is "a system of corrective justice intended to be complete, and enacted under the right belonging to the government to prescribe the conditions on which it would subject itself to the judgment of the courts in the collection of its revenues." Graham v. DuPont, 1923, 262 U.S. 234, 255, 43 S.Ct. 567, 569, 67 L.Ed. 965, 967; Snyder v. Marks, 1883, 109 U.S. 189, 3 S.Ct. 157, 27 L.Ed. 901; Cheatham v. United States, 1876, 92 U.S. 85, 23 L.Ed. 561.

■ Section 6404 does not impose a duty on the District Director to abate improper assessments, thereby providing a basis for a taxpayer's summary action challenging the director's refusal to abate an allegedly incorrect assessment. Its thrust is permissive, not mandatory. Its language reads, "[t]he Secertary or his delegate *is authorized to* abate" excessive assessments. Accordingly, the Treasury Regulations under this provision provide that the "district director *may* abate any assessment, or unpaid portion thereof, if the assessment is in excess of the correct tax liability * *." Treas. Reg. 301.6404–1(a) (1954). In this context we must interpret the terms *"is authorized to"* and *"may"* as creating

an option to act but not a duty to do so. The absence of any other language in Section 6404 suggesting the imposition of a duty on the district director and the existence of a separate and complete procedure expressly provided under Section 7422, by which the taxpayer may protect the tax levied upon him, support this construction. There is a total absence of any cases construing Section 6404 as providing an opportunity for taxpayers to challenge and obtain a judicial review on the merits of a tax assessment against them.

■ The Government's argument that the appellants must seek their relief through the established "pay and sue" procedures is buttressed by Section 7421 (a). That provision expressly declares that, with certain exceptions not relevant here, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." The purpose of this section is to prevent judicial interference with the administrative system of tax collections of funds necessary to government operations and to restrict judicial review of the tax assessments and collections to the procedures expressly provided. Since the relief sought by appellants is essentially to restrain collection of the taxes assessed against them, their case falls within this ban. See Graham v. DuPont, 1923, 262 U.S. 234, 43 S.Ct. 567, 67 L.Ed. 965; Missouri Valley Intercollegiate Athletic Ass'n v. Bookwalter, 8 Cir., 1960, 276 F.2d 365.

The appellants support their quest for extraordinary relief by appealing to the doctrine of Miller v. Standard Nut Margarine Co., 1932, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422. See also Enochs v. Williams Packing & Navigation Co., 5 Cir., 1961, 291 F.2d 402; Lassoff v. Gray, 6 Cir., 1959, 266 F.2d 745. But this relief is usually restricted to a case in which it is charged that the threatened exaction is illegal and when the amount of the assessment is so great in relation to the assets of the taxpayer that to require payment of the tax would force a distress sale of assets or other

dislocation that could not be repaired by a refund if the tax were later found to have been erroneously collected. · In the three cases cited the court found that payment of the tax would ruin the taxpayer. In numerous other cases this Court has refused to intervene. McDonald v. Phinney, 5 Cir., 1961, 285 F.2d 121; United States v. Curd, 5 Cir., 1958, 257 F.2d 347, certiorari denied 358 U.S. 920, 79 S.Ct. 290, 3 L.Ed.2d 239; Darnell v. Tomlinson, 5 Cir., 1955, 220 F.2d 894; Tomlinson v. Poller, 5 Cir., 1955, 220 F.2d 308, certiorari denied Pace v. Tomlinson, 350 U.S. 832, 76 S.Ct. 66, 100 L.Ed. 742.

The appellants allege no facts entitling them to relief. In fact, they have not shown that the payment of the assessment would create any hardship at all. They say that it is rough to pay the penalty, because they could not deduct the payment as a business expense. That, however, is a consequence of the tax itself, not of the procedure for collection and protest. If the tax is valid, the taxpayer should not be able to claim it as a deduction; if the tax is invalid, the taxpayers will recover it in a refund suit. Similarly, with regard to the alleged lack of recourse against there customers, the taxpayers' position may be affected by the outcome of their challenge to the tax but not by the timing and procedure allowed for the trial of their challenge. The appellants do not contend that they are unable to pay the tax or that they would be irreparably injured or even severely damaged by having to pay before lodging their appeal. Their only hardship seems to be that they, like many another, do not wish to part company with cash until they are sure they owe the tax. Unfortunately for the appellants, in the tax field Congress has subordinated utopian solutions, such as the appellants put forward, to the needs of financing governmental operations and of conducting tax collections and determinations by orderly established procedures. In this workaday world those procedures provide taxpayers with a reasonably adequate reme-

dy. They must content themselves with it.

The judgment is
Affirmed.

CAMERON, Circuit Judge, concurs in the result.