United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 27, 2003**

Charles R. Fulbruge III
Clerk

Revised July 14, 2003

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 01-41471

RAYMOND W. BEALL; HAZEL A. BEALL,

Plaintiffs-Appellants,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Texas

Before GARWOOD, JONES and STEWART, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiffs-appellants Raymond W. Beall and Hazel A. Beall (the Bealls) appeal the dismissal, for want of subject matter jurisdiction, of their claim for a refund of the interest on income taxes paid to the defendant-appellee, the United States. Because we conclude, for the reasons set forth below, that the district court did possess jurisdiction to hear the Bealls' complaint, we

reverse the judgment of the district court and remand.

## Background

On March 31, 1997, the Bealls entered into a settlement agreement with the Internal Revenue Service (IRS) to resolve certain tax deficiencies arising from the Bealls' 1984 tax return and subsequent claim for refund.[1] Following that settlement, the IRS assessed additional income taxes, as well as interest on those taxes, against the Bealls. After satisfying their outstanding tax liability, the Bealls, on December 22, 1997, filed a claim for refund of the tax and interest charged against them.

The IRS denied the Bealls' claim for refund, and on April 22, 1999, the Bealls filed a supplemental claim for refund in which they claimed both that the interest on their assessed tax liability should have been netted against other years under 26 U.S.C. § 6221(d), and that a portion of that interest should have been abated under 26 U.S.C. § 6404(e)(1). Based on those refund claims, the Bealls then commenced the present suit in federal district court on March 28, 2000.

---

[1] The Bealls' tax dispute with the IRS centered around Raymond Beall's investment, in the early 1980s, in two agricultural partnerships. Based on losses reported by those partnerships, the Bealls claimed a tax loss for 1984 of $208,353, and filed an application for a tax refund in 1985 on which they carried back a portion of losses incurred by the partnerships from 1981 to 1984. The IRS eventually examined the partnerships' 1984 returns, and in 1991, issued proposed adjustments to the partnerships' income tax returns. It is the Bealls' income-tax liability resulting from those adjustments that formed the basis of the present dispute.

The district court granted the Government's motion to dismiss, concluding, among other things, that it lacked subject matter jurisdiction to hear a challenge to the denial of a request for interest abatement under section 6404(e)(1) of the Internal Revenue Code.[2] The Bealls now appeal the dismissal only of that part of their claim for refund based on 26 U.S.C. § 6404(e)(1).

## Discussion

"We review a district court's grant of a motion to dismiss for lack of subject-matter jurisdiction *de novo*, using the same standards as those employed by the lower court." *John Corp. v. City of Houston*, 214 F.3d 573, 576 (5th Cir. 2000); *Rodriguez v. Texas Comm'n on the Arts*, 199 F.3d 279, 280 (5th Cir. 2000). We accept as true the Bealls' uncontroverted factual allegations, "and will affirm the dismissal if 'the court lacks the statutory or constitutional power to adjudicate the case.'" *Id*. (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).

A. *Sovereign Immunity*

As a threshold matter, we first address the Government's position that Congress has not waived sovereign immunity so as to

---

[2] The district court also dismissed, for want of subject matter jurisdiction, the Bealls § 6221(d) interest-netting claim. The court had previously dismissed, as untimely, that portion of the Bealls' complaint that relied on their December 12, 1997, claim for a refund. The Bealls did not appeal either of these rulings, and they are not, therefore, now before us.

3

permit a plaintiff to sue in federal district court for a refund of unabated interest. *See F.D.I.C. v. Meyer*, 114 S.Ct. 996, 1000 (1994) ("Sovereign immunity is jurisdictional in nature. . . . Therefore, we must first decide whether . . . immunity has been waived."). Without such a waiver, there can be no jurisdiction over the Bealls' refund claim in either the district court or in this court. *Id.; United States v. Mottaz*, 106 S.Ct. 2224, 2229 (1986) ("When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction."); *Moore v. Dept. of Agric. on Behalf of Farmers Home Admin.*, 55 F.3d 991, 993 (5th Cir. 1995).

The Bealls premised subject matter jurisdiction in the district court upon 28 U.S.C. § 1346. Section 1346(a)(1) provides for original jurisdiction in the district courts over claims "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." 28 U.S.C. § 1346. We have stated, however, that section 1346, standing alone, is insufficient to waive sovereign immunity. "Section 1346 is a general jurisdiction statute that does not constitute a separate waiver of sovereign immunity." *Schanbaum v. United States*, 32 F.3d 180, 182 (5th Cir. 1994).

4

The Bealls' complaint, however, references, among other provisions, section 7422 of the Internal Revenue Code. In language that mirrors section 1346, section 7422 provides for a civil action for refund of certain wrongfully collected taxes.[3] And although section 1346 does not waive sovereign immunity by itself, when coupled with a claim brought under section 7422, section 1346 does provide the necessary waiver of immunity. *See United States v. Michel*, 50 S.Ct. 284, 285 (1931); *Schanbaum*, 32 F.3d at 182 ("Section 1346 operates in conjunction with 26 U.S.C. § 7422 to provide a waiver of sovereign immunity in tax refund suits . . . when the taxpayer has fully paid the tax and filed an administrative claim for a refund.").

The Bealls have fully paid the tax and interest at issue, and have filed a claim for a refund with the IRS. If their claim for a refund of unabated interest under 26 U.S.C. § 6404(e)(1), therefore, is cognizable under section 7422, then sovereign immunity presents no bar to the exercise of subject matter jurisdiction.

---

[3] Section 7422 provides for the recovery of "any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected." 26 U.S.C. § 7422(a).

Section 7422's reference to "any internal revenue tax" also encompasses interest assessed on an owed tax. *See* 26 U.S.C. § 6601(e)(1) (providing that "[a]ny reference" in the Internal Revenue Code "to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax").

The Government's claim of immunity thus requires us to address the compass of section 7422 with an eye to determining whether it can accommodate the Bealls' interest abatement claim. According to the Government it cannot, and a claim for abatement of interest, therefore, cannot be brought as a claim for a refund under section 7422. The language of the statute, however, is not susceptible to so limited a construction, and we decline to give it such.

Section 7422 permits a claim for a refund not only for "erroneously or illegally assessed" taxes, but also for "any sum alleged to have been excessive or in any manner wrongfully collected." 26 U.S.C. § 7422. Whether the Bealls' abatement claim is cognizable under section 7422, thus requires the resolution of two questions: (1) whether the phrase "any sum," includes unabated interest charged on income taxes owed; and if so, (2) whether the phrase "excessive or . . . wrongfully collected" includes a sum of interest that the IRS has refused to abate in accordance with 26 U.S.C. § 6404.[4] We answer both questions in the affirmative, and

_____

[4] Section 6404, as amended by the Taxpayer Bill of Rights II, *see* Pub. L. No. 104-168, § 301(a), 110 Stat. 1452 (1996), permits the Secretary of the Treasury to abate interest charged against a taxpayer, and provides in relevant part

"(e) Abatement of interest attributable to unreasonable errors and delays by Internal Revenue Service.—
    (1) In general.—In the case of any assessment of interest on—
        (A) any deficiency attributable in whole or in part to any unreasonable error or delay by an officer or employee of the Internal Revenue Service (acting in his official city) in performing a ministerial or managerial act, or . .

conclude, therefore, that a claim for a refund of unabated interest is cognizable under section 7422 and is not barred by sovereign immunity.

The Supreme Court has long since indicated that the phrase "any sum" likely encompasses a claim for interest. Thus in construing identical language in section 1346, the Court noted that "'any sum,' instead of being related to 'any internal-revenue tax' and 'any penalty,' may refer to amounts which are neither taxes nor penalties," and that "[o]ne obvious example of such a 'sum' is interest." *See Flora v. United States*, 80 S.Ct. 630, 633 (1960).

A claim for abatement of interest, however, differs from the prototypical claim for refund of taxes and interest under section 7422. The archetypal refund claim is a claim that the taxpayer never owed the underlying tax. *See United States v. Williams*, 115 S.Ct. 1611, 1616 (1995) (noting that section 1346(a)(1) displaced the common-law remedy of assumpsit for money had and received, a remedy that afforded relief to taxpayers who "had paid money they did not owe—typically as a result of fraud, duress, or mistake"); *see, e.g.*, *Your Insurance Needs Agency, Inc. v. United States*, 274 F.3d 1001 (5th Cir. 2001) (addressing a refund claim for tax overpayments). A claim for the refund of interest that the

---

. The Secretary may abate the assessment of all or any part of such interest for any period." 26 U.S.C. § 6404(e)(1) (2002).

7

taxpayer argues should have been abated, on the other hand, is not a claim to recover money that was paid but never owed, but is a claim that interest, otherwise legitimately assessed, could have been less had the IRS not unreasonably delayed in the performance of a ministerial or managerial task.  *See* 26 U.S.C. § 6404(e)(1).

That a claim for abatement of interest is not identical to an action in assumpsit or a refund claim challenging the validity of the underlying tax, however, does not necessarily establish that an abatement claim cannot be prosecuted under section 7422.  Section 7422 is a statutory remedy, and is not confined to the limits of its common-law ancestor.  *See, e.g.*, *Flora*, 80 S.Ct. at 635 (noting that since 1862, an action for refund ceased to be regarded as a common-law action, "but rather as a statutory remedy which 'in its nature [was] a remedy against the Government") (quoting *Curtis's Adm'x v. Fiedler*, 67 U.S. (2 Black) 461, 479 (1862)).  It is the language of section 7422 that must control, language that in referring broadly to "any sum," would by its terms appear to accommodate a claim for the abatement of interest.

Finally, we note that our decision in *Paretto v. Usry*, 295 F.2d 499 (5th Cir. 1961), supports the conclusion that section 7422 may accommodate a claim for the refund of unabated interest.  In *Paretto*, a taxpayer who had been penalized for failing to withhold excise taxes on behalf of his customers, brought an action, citing section 6404, for the abatement of assessed taxes and penalties.

8

*Id.* at 499. Although we affirmed the dismissal of the taxpayer's action for equitable relief, we noted that the taxpayer's appropriate course of action would have been to pay the taxes and penalties, and then to challenge the tax through the normal "pay and sue" provisions of section 7422. *Id.* at 501–02. We read *Paretto*, therefore, as supporting the proposition that a cause of action under section 7422 encompasses a claim for abatement of interest under section 6404(e)(1). *See also Magnone v. United States*, 733 F.Supp. 613 (S.D.N.Y. 1989) (indicating that a claim under 6404(e)(1) could have proceeded as a claim for a refund under section 7422, had the plaintiffs complied with the payment requirements of that section). Accordingly, we decline to restrict section 7422 as the Government suggests, and instead find that the phrase "any sum," thus unmoored from its common-law origins, is copious enough to encompass a claim for refund of unabated interest.

Having answered the first question—whether the phrase "any sum" includes unabated interest charged on income taxes owed—in the affirmative, we now turn to the second, and conclude that the phrase "excessive or . . . wrongfully collected" includes interest charges that the IRS abused its discretion in refusing to abate pursuant to 26 U.S.C. § 6404(e)(1).

As we did above, in interpreting a statute, we look first to its plain language. *See Moore v. Cain*, 298 F.3d 361, 366 (5th Cir.

2002).  Excessive is defined as "exceeding the usual, *proper*, or normal."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 792 (1961) (emphasis added).  *See also* 5 OXFORD ENGLISH DICTIONARY 501  (2d ed. 1999) ("Exceeding what is right, proportionate, or desirable; immoderate, inordinate, extravagant.").[5]  The question thus becomes whether the denial of a request for abatement of interest, where that denial amounts to an abuse of discretion, is either not proper, or results in the collection of a sum of interest that so exceeds the usual or normal as to be considered excessive.

An abuse of discretion necessarily occurs where an act can only be described as clearly improper.  *See, e.g.*, *United States v. O'Neill*, 709 F.2d 361, 372 n.11 (5th Cir. 1983) (equating an improper decision with an abuse of discretion).  Thus, where a refusal to abate interest amounts to an abuse of discretion, we may conclude that that refusal is improper, and the improperly unabated interest therefore excessive.  In other words, any time that the Secretary should commit an abuse of discretion in denying a request for an abatement, the Secretary has assessed an improper, and therefore an excessive sum.  Thus we also answer in the affirmative our second question—whether the phrase "excessive or . . . wrongfully collected" includes a sum of interest that the IRS has

---

[5]  The Supreme Court has applied an identical definition of the term "excessive" in the context of the Excessive Fines Clause.  *See United States v. Bajakajian*, 118 S.Ct. 2028, 2036–2037 (1998) ("Excessive means surpassing the usual, the proper, or a normal measure of proportion.").

10

improperly refused to abate in accordance with 26 U.S.C. § 6404.

Having determined that the phrase "any sum" includes a sum of unabated interest, and that the phrase "excessive . . . or wrongfully collected" includes the denial of a request for abatement where that denial amounts to an abuse of discretion, we conclude that an interest abatement claim is cognizable under section 7422, and that sovereign immunity over such claim is waived by operation of sections 7422 and 1346. We therefore join our sister circuits in holding that a "taxpayer['s] cause of action, alleging that [he] paid excessive interest charges because the IRS abused its discretion in refusing to abate interest pursuant to I.R.C. § 6404(e)(1), falls within the district court's jurisdiction to decide cases regarding 'any sum alleged to have been excessive . . . under the internal-revenue laws.'" *Selman v. United States*, 941 F.2d 1060, 1062 (10th Cir. 1991); *accord Argabright v. United States*, 35 F.3d 472 (9th Cir. 1994) (declining to review an interest abatement claim, but exercising subject matter jurisdiction over that claim); *Horton Homes*, 936 F.2d 548, 550 (11th Cir. 1991) (same).

B. *Review of Section 6404(e)(1) Denials*

That the district court possessed the power to hear the Bealls' claim, however, merely begins our inquiry; it does not establish whether the denial of the Bealls' request for abatement of interest is subject to judicial review.

11

Under the Administrative Procedure Act (APA), final agency decisions are generally susceptible to judicial review. Section 701(a) of the APA, however, proscribes review in two narrow situations, namely where "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1), (2). Based on these limitations, each circuit to address the issue prior to 1996 determined that the decision to grant an abatement under section 6404(e)(1) was not subject to judicial review. *See Argabright*, 35 F.3d at 476; *Selman*, 941 F.2d at 1064; *Horton Homes*, 936 F.2d at 554.

Proceeding from section 701 of the APA, those circuits concluded that the permissive language of section 6404(e)(1), as well as the absence in that section of any substantive standards by which a court might review an agency action, precluded judicial review. *See Argabright*, 35 F.3d at 475–476 (citing *Horton Homes* and *Selman*). In further support of this position, each circuit also examined the legislative history of section 6404, noting the absence of any substantive standards for review in the legislative history, as well as language in the House and Senate reports noting that section 6404(e)(1) "gives the IRS the authority to abate interest but does not mandate that it do so." *Id*. at 476. Accordingly, all three ultimately agreed that "the language, structure and legislative history of I.R.C. § 6404(e)(1) indicate[d] that Congress meant to commit the abatement of interest

to the Secretary's discretion," and that section 701(a)(2) barred judicial review. *Selman*, 941 F.2d at 1064.[6]

Congress, however, has since amended section 6404. As part of the passage in 1996 of the Taxpayer Bill of Rights II, *see* Pub. L. No. 104-168, 110 Stat. 1452 (codified as amended in scattered sections of 26 U.S.C.), Congress approved a number of amendments to section 6404 that are relevant to our analysis of the present case. First, with respect to section 6404(e)(1), Congress added "unreasonable" to modify the words "error or delay," and added "or managerial act," where before only "ministerial act" had appeared. *See id*. at § 301(a)(2). The current version of section 6404(e)(1), therefore, now provides:

> "(e) Abatement of interest attributable to unreasonable errors and delays by Internal Revenue Service.—
>     (1) In general.—In the case of any assessment of interest on—
>             (A) any deficiency attributable in whole or in part to any unreasonable error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial or managerial act, . . .
>     The Secretary may abate the assessment of all or any part of such interest for any period."
>     26 U.S.C. § 6404(e)(1) (2002).

---

[6] Of the three opinions, only one, *Horton Homes*, concluded that review of the abatement decision was prohibited by § 701(a)(1) as well as § 701(a)(2). *See Horton Homes*, 936 F.2d at 551–552. The *Selman* court found that the language of § 6404(e)(1) did not expressly preclude judicial review, *see Selman*, 941 F.2d at 1063, and the *Argabright* court, having found review precluded by § 701(a)(2), did not address the applicability of § 701(a)(1).

13

Second, Congress provided for review in the Tax Court of the Secretary's decision to deny a request for the abatement of interest. *See* Pub. L. No. 104–168, § 302, 110 Stat. 1457–1458 (1996). Thus, the current section 6404(h)[7] provides, in part, that

> "The Tax Court shall have jurisdiction over any action brought by a taxpayer who meets the requirements referred to in section 7430(c)(4)(A)(ii) to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion, and may order an abatement, if such action is brought within 180 days after the date of the mailing of the Secretary's final determination not to abate such interest." 28 U.S.C. § 6404(h).

The statutory landscape in which we address the Bealls' claim for interest abatement is thus substantially different from the one facing the *Horton Homes*, *Selman*, and *Argabright* courts. And though, were we to address today the same issue that faced those courts, we would most likely, and for the same reasons, conclude that judicial review of the Secretary's decision to deny an abatement request is barred, our decision now must be guided instead by the above 1996 amendments.[8] We cannot merely adopt the

---

[7] Section 6404(h) has not been substantively amended since its passage in 1996. Its designation, however, has changed twice. The current § 6404(h) was initially designated § 6404(g). It was redesignated 6404(i) by the IRS Restructuring and Reform Act of 1998. Thus, from 1998 until 2002, it appeared in the United States Code as 26 U.S.C. § 6404(i). In 2002, Public Law Number 107–134, § 112(d)(1) repealed the former subsection (h) and designated then subsection 6404(i) as subsection (h), the designation it currently holds.

[8] The Bealls attack, in a number of places in their brief, the soundness of the decisions in *Horton Homes*, *Selman*, and *Argabright* that the denial of a request for abatement before 1996 was, in fact, wholly discretionary and unreviewable. This

14

reasoning of the *Horton Homes* line of cases, but must construe, as a matter of first impression, the effect of the 1996 changes to section 6404.

Having reviewed those changes, we find that in amending section 6404, Congress clearly expressed its intent that the decision to abate interest no longer rest entirely within the Secretary's discretion. *See Miller v. Commissioner of Internal Revenue*, 310 F.3d 640, 643 (9th Cir. 2002) (recognizing that "*Argabright*'s holding that judicial review is not available for IRS decisions pursuant to § 6404(e)(1) . . . has been undermined by subsequent legislation and, to that extent, is no longer good law."). We need look no further for support for this conclusion than the simple addition of section 6404(h) granting jurisdiction to the Tax Court to review that decision. Indeed, the vesting of jurisdiction in the Tax Court to review interest abatement challenges can be given no meaning other than that the abatement decision is no longer committed solely to agency discretion.

---

question, however, is now not before us. Moreover, that issue apparently was resolved contrary to the Bealls' position by our unpublished opinion in *Maloney v. United States*, 95-2 U.S.T.C. ¶ 50,441 (No. 94-30609, 5th Cir. July 13, 1995), in which we affirmed without statement of reasons the district court's unpublished decision in *Maloney v. United States*, 94-2 U.S.T.C. ¶ 50,484 (civil No. 94-0602, E.D. La. Sept. 6, 1994). Although our opinion there does not so reflect, the district court's opinion in *Maloney* relied on *Horton Homes* and *Selman* and held "the Court is without authority to review plaintiff's claim that the IRS should have abated the assessment of interest under 28 U.S.C. § 6404(e)(1)." Unpublished opinions issued before January 1, 1996, are precedent. Fifth Cir. Rule 47.5.3.

15

Accordingly, we cannot say that either section 701(a)(2) of the APA, or the absence of manageable standards of review generally, any longer precludes judicial review of the denial of a request for the abatement of interest.[9]

C.  *Exclusive Jurisdiction in the Tax Court*

Having concluded that the decision to abate interest no longer rests entirely with the Secretary, the question remains whether review of that decision is limited to the Tax Court, or whether review is also available in federal district court.  Thus, although both parties concede, as they must, that review of the Secretary's decision is now available in the Tax Court, the Government

---

[9]  Although we hold that Congress has indicated that the decision to abate interest is no longer committed entirely to agency discretion, and that judicial review of that decision is no longer barred by § 701(a)(2) of the APA, because we also hold that a claim for a refund of unabated interest is cognizable under I.R.C. § 7422, *see supra* Part II(A), we note that our discussion of § 701(a)(2) should not be read as sanctioning the use of the APA as a vehicle for bringing a challenge to a decision of the Secretary under § 6404(e)(1).  "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action."  *Bowen v. Massachusetts*, 108 S.Ct. 2722, 2736 (1988).  And review under the APA is accordingly available only where "there is no other adequate remedy in a court."  5 U.S.C. § 704; *see Poirier v. Commissioner*, 299 F.Supp. 465, 466 (La. 1969) (denying relief under the APA where taxpayers had an adequate remedy under the I.R.C.); *see also Town of Sanford v. United States*, 140 F.3d 20, 23-24 (1st Cir. 1998) (denying relief under the APA for the recovery of taxes lost when the United States obtained a forfeiture judgment against a local taxpayer where the plaintiff town had the available remedy of moving to reopen a forfeiture decree); *New York City's Employee Ret. Sys. v. Securities and Exchange Commission*, 45 F.3d 7, 14 (1995) (refusing to entertain a claim for relief under the APA where the plaintiffs had an available alternative remedy under Rule 14a-8).

maintains that the grant of jurisdiction in section 6404(h) to the Tax Court is exclusive, and that the district court is, therefore, without power to hear a claim under section 6404(e)(1).  We do not agree.

Unlike our conclusion that the Secretary's abatement decision is no longer discretionary, determining whether Congress intended for the jurisdictional grant in section 6404(h) to be exclusive requires us to delve further into the legislative history of section 6404 than merely noting the simple fact of section 6404(h)'s enactment.

The House report accompanying the 1996 Taxpayer Bill of Rights indicates that Congress was aware of the *Horton Homes* line of cases.  In describing the pre-1996 state of the law governing the review of interest abatement denials, the report notes that "[f]ederal courts generally do not have the jurisdiction to review the IRS's failure to abate interest."  *See* H.R. REP. NO. 104–506, at 28 (1996).  From this statement, the Government argues that because Congress was aware that federal courts would not review the Secretary's decision under section 6404(e)(1), the decision to grant jurisdiction only to the Tax Court must mean that Congress chose not to extend jurisdiction to the district courts.[10]

---

[10]   The Government is not alone in advancing this position. Rather, at least three district courts, in addition to the court below, have been persuaded by identical reasoning.  *See Kraemer v. United States*, 89 A.F.T.R.2d 2002-1796 (S.D. Tex. 2002) ("Congress first acknowledged the district courts' powerlessness

17

There are, however, a number of problems with the Government's argument. First, it ignores the basis for the decisions in the *Horton Homes* line of cases. Those decisions denied review not because the district courts lacked subject matter jurisdiction over the taxpayers' claims,[11] but because the then extant version of section 6404(e)(1) committed the decision to abate interest to agency discretion. *See Argabright*, 35 F.3d at 476; *Selman*, 941 F.2d at 1064; *Horton Homes*, 936 F.2d at 554. In other words, the federal district courts have always possessed *jurisdiction* over challenges brought to section 6404(e)(1) denials, they simply determined that the taxpayers had no *substantive right* whatever to a favorable exercise of the Secretary's discretion (at least absent unfavorable exercise on an unconstitutional basis, *Horton Homes* at

to review abatement decisions and then granted the Tax Court, alone, that jurisdictional power. This is the only plausible reading of 26 U.S.C. § 6404[h]."); *Davies v. United States*, 124 F.Supp.2d 717, 720 (D. Me. 2000) ("Congress, in enacting section [6404(h)], was well aware of, and intended to leave undisturbed, the *Argabright* line of cases—*i.e.*, that it expected that federal district courts would not undertake [review of interest abatement claims].")*; Henderson v. United States*, 95 F.Supp.2d 995 (E.D. Wis. 2000).

[11] The Government's entire jurisdictional argument on this point, therefore, is constructed on a false premise, namely that the *Horton Homes*, *Selman*, and *Argabright* courts did not have subject matter jurisdiction over interest abatement claims. In so doing, the Government merely compounds the committee report's misuse of the term "jurisdiction." *See, e.g.*, *Steel Co. v. Citizens for a Better Environment*, 118 S.Ct. 1003, 1010 (1998) ("'Jurisdiction,' it has been observed, 'is a word of many, too many, meanings.'") (quoting *United States v. Vanness*, 85 F.3d 661, 663 n.2 (D.C. Cir. 1996)).

18

554).   As  we  concluded  above,  however,  in  amending  section 6404(e)(1) and in enacting section 6404(h), Congress indicated that such is no longer the case, and thereby removed any impediment to district court review of section 6404(e)(1) claims.

Not only did Congress remove the barrier to district court review recognized in the *Horton Homes* cases,[12] but Congress nowhere stated in the 1996 amendments that the district courts *did not* have jurisdiction  to  review  interest  abatement  denials.   On  the contrary,  the  House  committee  report  clearly  states  that  "[n]o inference is intended as to whether under present law any court has jurisdiction to review IRS's failure to abate interest."  *See* H.R. REP. NO. 104-506, at 28 (1996).[13]

Viewed against a proper reading of the *Horton Homes* cases, therefore, the Government's argument essentially becomes a claim

---

[12]   There can be no question but that the IRS's denial of a request for the abatement of interest is now reviewable.  *See Taylor v. Commissioner*, 113 TC 206 (1999) (reviewing the denial of a request for an abatement); *Lee v. Commissioner*, 113 TC 145 (1999) (same).  *See also Miller*, 310 F.3d at 643.

[13]   The Government would have us read this language as an expression of Congress's intent to leave pre-1996 case law in effect.  The more natural reading of the committee's statement, however, takes it simply at face value: that Congress intended to make no statement regarding the existence of jurisdiction in the district courts or the applicability under the new law of the *Horton Homes* line of cases.  Moreover, if Congress did intend to leave pre-1996 case law in effect, such a reading would not advance, but would actually undermine the Government's position, *i.e.*, it would follow from the fact that the district courts did have *jurisdiction* over § 6404 claims before 1996, that the district courts would continue to have jurisdiction over those claims after 1996.

19

that Congress, in granting jurisdiction to the Tax Court to review interest abatement denials, impliedly repealed the district court's existing jurisdiction to review the same. Repeals by implication, however, are disfavored. *See Traynor v. Turnage*, 108 S.Ct. 1372, 1381 (1988); *Jackson v. Stinnett*, 102 F.3d 132, 135 (5th Cir. 1996) ("It is hornbook law that 'repeals by implication are not favored.'") (quoting *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 107 S.Ct. 2494, 2497 (1987)). And there is nothing in the grant of jurisdiction to the Tax Court in section 6404(h) that would preclude review in federal district court. Moreover, as observed above, the House report clearly noted that Congress's grant of jurisdiction was not to be read as a statement regarding the existence *vel non* of jurisdiction in the district courts.[14] Indeed,

---

[14] We realize that our conclusion that the Taxpayer Bill of Rights II was not intended to preclude the exercise of district court jurisdiction to hear abatement claims is undermined somewhat by certain material reprinted in the Congressional Record at the request of Senator Bryan, a co-sponsor of the bill in the Senate that ultimately became the Taxpayer Bill of Rights II. That material includes the following explanation of § 6404(h):

"[Taxpayer Bill of Rights II] will provide that for qualified small taxpayers, as defined in section 7430(c)(4)(A)(ii), the Secretary must abate or refund interest when the IRS has made an unreasonable error or delay. This will allow courts to review the IRS determination on the abatement of interest issue for small taxpayers. For nonqualified 'larger' taxpayers, courts will still not be allowed to review the IRS determination on the interest abatement issue . . . ." 141 CONG. REC. S1370–1371 (1995) (material appended to statement of Sen. Bryan).

This isolated statement, however, does not alter our conclusion that the 1996 amendments to § 6404 do not deprive the

20

rather than reading the grant of jurisdiction to the Tax Court as implying the absence of jurisdiction in the district court, the more natural interpretation of section 6404(h) is that Congress simply chose to extend concurrent jurisdiction to the Tax Court over a certain class of claims.[15]

We also find persuasive the Bealls' argument that reading the grant of jurisdiction to the Tax Court as exclusive of jurisdiction

---

district courts of jurisdiction to hear challenges to the IRS's failure to abate interest. First, Senator Bryan's statement is contradicted by remarks made on the same day by a fellow co-sponsor of the bill in the Senate. In the same portion of the Congressional Record, Senator Pryor noted that the Taxpayer Bill of Rights II will both "require the IRS to abate interest when it has made an unreasonable error or delay, and enable the *courts* the power to review the interest abatement determination." 141 CONG. REC. S1369 (1995) (statement of Sen. Pryor)(emphasis added). Second, the House report, *see supra* text accompanying note 14, which unlike Senator Bryan's 1995 statement was prepared in 1996 at the time the bill was enacted into law, expressly declined to make any statement regarding the availability of review of the abatement issue in the district court. *See* H.R. REP. NO. 104-506, at 28 (1996) (warning that "[n]o inference is intended as to whether under present law any court has jurisdiction to review IRS's failure to abate interest."). And third, and most important, the language of § 6404(h) nowhere indicates that district court review of the abatement issue is not available, nor is there any indication that the grant of jurisdiction to the Tax Court is in any way inconsistent with the availability of district court review.

[15] Section 6404(h) only grants the Tax Court jurisdiction over a limited class of claims. The claimant must bring an action within 180 days after the mailing of notice of the Secretary's decision not to abate interest, and the claimant must be an individual taxpayer whose net worth does not exceed $2,000,000 at the time the action is filed, or a business, corporation, or partnership of less than 500 employees, whose net worth does not exceed $7,000,000 at the time the action is filed. *See* 26 U.S.C. §§ 6404(h); 7430(c)(4)(A)(ii).

in the federal district courts, would be inconsistent with the general structure of the Internal Revenue Code and the jurisdictional limitations of the Tax Court.

Though the federal district courts have jurisdiction generally over suits for the refund of taxes, *see* 28 U.S.C. § 1346, that jurisdiction is available only where the taxpayer first pays the entire amount of the disputed tax. *See Flora v. United States*, 80 S.Ct. 630, 646–647 (1960). The Board of Tax Appeals, the predecessor of the Tax Court, on the other hand, was established by Congress to relieve taxpayers of the burdens of pre-payment and to permit them to obtain a determination of their tax liability *before* paying any deficiency. *Id*. at 637, 638.[16] Accordingly, the Tax Court, as a statutory court of limited jurisdiction, possesses "only such power to adjudicate controversies as is conferred upon it by the Internal Revenue Code." *Continental Equities, Inc. v. Commissioner*, 551 F.2d 74, 79 (5th Cir. 1977). "It does not have the authority to order that a refund be given, or to review the Commissioner's denial of a refund claim." *Id*. And a specific grant of jurisdiction, such as section 6404(h), is thus necessary for the Tax Court to exercise any jurisdiction.

The same is not true of the district court's refund jurisdiction. Having removed the impediment to district court

---

[16]The Board of Tax Appeals was thus a particular help to those "small" taxpayers who would be less likely to be able to make prepayment of their IRS determined tax liability.

review identified in *Horton Homes* by indicating that the IRS's decisions on requested interest abatement were not merely matters of administrative grace and that denials were subject to *substantive* challenge, it was not necessary for Congress to provide for a specific grant of jurisdiction to hear abatement denials. To read a grant of jurisdiction to the Tax Court to hear an interest abatement claim, as exclusive would be to read too much into section 6404(h).

Finally, we note that to deny district court jurisdiction to hear claims under section 6404(e)(1) would result in two anomalies. First, only certain taxpayers, namely those who meet the net worth requirements found in section 6404(h), would be able to seek judicial review of the IRS's failure to abate interest. Those taxpayers whose net worth exceeds the limits found in section 6404(h), would be left entirely without recourse. Second, denying district courts the power to hear claims under section 6404(e)(1) would force certain plaintiffs to split their abatement claims from their refund claims, and force them to seek relief in two courts. Thus, a plaintiff who chose to pay his tax liability first and sue in district court under 28 U.S.C. § 1346, would not be able to bring, at the same time, a challenge to the IRS's failure to abate interest already collected. Instead, that taxpayer would have to sever his interest abatement claim from his refund claim and pursue the abatement claim separately in the Tax Court. Such splitting of

claims is generally considered undesirable, *see, e.g.*, *In re Super Van, Inc.*, 92 F.3d 366, 371 (5th Cir. 1996) (discussing rule against claim-splitting), and we cannot conclude, absent some indication to the contrary, that Congress would have intended such a result.

For these reasons, we cannot conclude that the grant of jurisdiction to the Tax Court in section 6404(h) was meant to preclude the exercise of district court jurisdiction over interest abatement claims.

D. *Ministerial or Managerial Act*

Finally, the Government argues that even if the district court erred in dismissing the Bealls' complaint for lack of subject matter jurisdiction, dismissal was nevertheless warranted as the interest at issue did not accrue as a result of any IRS error or delay in performing a ministerial act.

The district court, however, dismissed the Bealls' complaint without addressing this issue. And because we conclude that this issue is best addressed in the first instance in the district court, we decline to address it here.

## Conclusion

After examining the legislative history of 6404(e)(1) and (h), we cannot conclude that Congress meant for the Tax Court's jurisdiction to hear section 6404(e)(1) claims to be exclusive. Nor can we conclude that sovereign immunity operates to bar relief

in the district courts for a claim for the abatement of interest brought under section 7422.

For these reasons, we find that the district court did have jurisdiction to hear the Bealls' claim for interest abatement.  We accordingly REVERSE the judgment of the district court, and REMAND for proceedings consistent with this opinion.

REVERSED and REMANDED.

25