United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 19, 2004**

Charles R. Fulbruge III
Clerk

Revised April 6, 2004

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————

No. 03-30545

————————————

DELTA COMMERCIAL FISHERIES ASSOCIATION; JOHN THOMPSON,

Plaintiffs-Appellants,

versus

GULF OF MEXICO FISHERY MANAGEMENT COUNCIL; UNITED STATES
DEPARTMENT OF COMMERCE, Donald L. Evans, as Secretary of,

Defendants-Appellees.

--------------------
Appeal from the United States District Court
for the Eastern District of Louisiana
--------------------

Before BENAVIDES, STEWART, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

Plaintiff-Appellant Delta Commercial Fisheries Association is a non-profit corporation designed to represent the interests of commercial fishermen. Plaintiff-Appellant John E. Thompson is a commercial fisherman and president of the Association. Appellants (together, the "Association") sued the Gulf of Mexico Fishery Management Council and Secretary of Commerce Donald Evans, the federal authorities responsible for regulating fishing in U.S. waters in the Gulf of Mexico. The Association's suit alleges that the Council does not include "fair and balanced" representation of

commercial and recreational fishing interests as required by a provision of the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C.A. § 1852(b)(2)(B) (West 2000). The district court determined that it lacked jurisdiction to hear the Association's claims and dismissed the suit. We affirm the judgment of the district court for two reasons: first, the Association lacked standing; and second, the United States has not waived its sovereign immunity from this type of suit.

## I.

The Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C.A. §§ 1801-1883 (West 2000), aims to preserve fishery resources by preventing overfishing, *id.* § 1801(a)(6). The Act creates several Regional Fishery Management Councils, each of which works with the Secretary of Commerce to manage fishery resources in a particular area. *Id.* § 1852(a). For instance, the Gulf of Mexico Fishery Management Council manages fishery resources off the coasts of Texas, Louisiana, Mississippi, Alabama, and Florida. *Id.* § 1852(a)(1)(E). Each council develops a fishery management plan with accompanying regulations and limits on catches, takes public comments, and submits the proposed plan and regulations to the Secretary. *Id.* § 1852(h). The Secretary then reviews the proposed plan and regulations and either approves or disapproves them. *Id.* § 1854.

The Gulf of Mexico Council comprises seventeen voting members, eleven of which the Secretary appoints.[1] *Id.* § 1852(a)(1)(E). Each voting member serves a three-year term. *Id.* § 1852(b)(3). The Secretary must appoint candidates from lists submitted by the governors of the states represented on the Council. *Id.* § 1852(b)(2)(C). After consulting representatives of commercial and recreational fishing interests "to the extent practicable," each governor submits a list of three qualified individuals for each vacancy on the Council. *Id.* The Secretary then reviews each governor's list and, if any individual on the list is not qualified, directs the governor to submit a new list. *Id.* In making appointments, the Secretary "shall, to the extent practicable, ensure a fair and balanced apportionment, on a rotating or other basis, of the active participants (or their representatives) in the commercial and recreational fisheries under the jurisdiction of the Council." *Id.* § 1852(b)(2)(B). The Secretary must submit a report to two congressional committees showing that the Council is fair and balanced. *Id.*

This case focuses on § 1852(b)(2)(B)'s requirement that the Secretary ensure "fair and balanced" representation of commercial and recreational fishing interests. The Association asserts the Council has not been fair and balanced because representation is

---

[1] The other members of the Council are the regional director of the National Maritime Fisheries Service and the principal state officer in charge of fisheries for each represented state. *Id.* § 1852(b)(1).

3

weighted toward recreational interests. Over the last four years, seven of the eleven appointed members have represented recreational interests, while only three or four members have represented commercial interests. The Association complained to the Secretary about this imbalance, but the Secretary responded that his ability to ensure "fair and balanced" representation is limited because the governors control the pool of available appointees.

The Association then sued the Council and the Secretary in his official capacity.[2] The suit seeks declarations (1) that the composition of the Council is not and has not been "fair and balanced"; (2) that shrimp aquaculture (which some recent Council members have represented) is not a commercial fishing interest; and (3) that when a substantial imbalance of representation exists, a list of nominees drawn solely from recreational fishing interests is not "qualified" within the meaning of the Act. The suit also seeks a preliminary (but not permanent) injunction prohibiting the Secretary and Council from (1) appointing new members; (2) allowing new members to take their seats; and (3) conducting business that affects commercial fishermen.

The Government moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Government argued (1) that the United States has not waived its sovereign immunity; (2) that

---

[2] The Association originally sued the Secretary as an individual but later amended its pleadings to delete all reference to the Secretary as an individual. Thus, the Association has not sued the Secretary or any voting member of the Council in his or her individual capacity and does not seek to invoke *Ex parte Young*, 209 U.S. 123 (1908).

the Act does not provide for a private right of action to challenge the Council's composition; and (3) that the Association lacked Article III standing to sue.

The district court concluded that the Act did not waive the Government's sovereign immunity against a suit challenging the composition of the Council and therefore dismissed the case based on lack of jurisdiction. *Delta Commercial Fisheries Ass'n v. Gulf of Mex. Fishery Mgmt. Council*, 259 F. Supp. 2d 511, 516 (E.D. La. 2003). The Association appealed.

## II.

We first address the Association's Article III standing to challenge the composition of the Council. Although the district court did not address standing, this Court "may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision." *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003). We review questions of standing *de novo*. *Arguello v. Conoco, Inc.*, 330 F.3d 355, 361 (5th Cir. 2003).

If a plaintiff lacks Article III standing, then a federal court lacks jurisdiction to hear the complaint. *Grant ex rel. Family Eldercare v. Gilbert*, 324 F.3d 383, 386 (5th Cir. 2003). The Association, as the party invoking federal jurisdiction, bears the burden of establishing the three familiar elements of Article

5

III standing: injury in fact, causation, and redressibility. *McConnell v. Fed. Election Comm'n*, 124 S. Ct. 619, 707 (2003).

To show injury in fact, a plaintiff must demonstrate an injury that is "'concrete,' 'distinct and palpable,' and 'actual or imminent.'" *Id.* (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990)). The Association has failed to explain how the purported imbalance of interests on the Council causes any such injury. The Association alleges that regulations made by the Council profoundly affect their ability to earn a living. However, the Association has failed to challenge any specific fishery plan, regulation, order, or enforcement action. Nor has the Association challenged any specific appointment to the Council.

The Association admits that it has not challenged any specific adverse action by the Council or by the Secretary. Instead, the Association emphasizes the purported deviation from the statutory requirement that the Council be "fair and balanced." According to the Association, this deviation by itself constitutes injury in fact. But the only interest injured by deviating from this mandate is the Association's generalized interest in proper application of the law. Frustration of such an interest is not by itself an injury in fact for purposes of standing. *See Sierra Club v. Glickman*, 156 F.3d 606, 613 (5th Cir. 1998).[3]

---

[3]  *Cargill, Inc. v. United States*, 173 F.3d 253 (5th Cir. 1999), a case that bears some superficial resemblance to this case, is distinguishable. In *Cargill*, a federal agency planned a study of the toxic effects of diesel on miners. The agency decided to arrange for peer review of the protocol to be used in the

6

The Association complains that challenging a specific regulation would be unworkable. Any such challenge, the Association argues, would require a showing that the regulation is arbitrary and capricious--a showing that, in the Association's view, is exceedingly difficult. These practical obstacles, however, do not obviate the "irreducible" constitutional requirement that a plaintiff demonstrate an actual or imminent injury. *See McConnell v. Fed. Election Comm'n*, 124 S. Ct. at 707 (quoting *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000)).

A plaintiff's failure to establish one of the three elements of Article III standing deprives federal courts of jurisdiction to hear the plaintiff's suit. *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002). Therefore, because the Association has

---

study. The agency therefore authorized a board of scientific counselors to review the protocol. A coalition of mine owners protested that the board was not "fairly balanced in terms of points of view represented" as required by § 5 of the Federal Advisory Committee Act ("FACA"), 5 U.S.C.A. app. 2 § 5 (West 1996). The Government argued that the mine owners had not demonstrated that a deviation from the "fairly balanced" requirement constituted an injury in fact. However, *Cargill* determined that "[w]hen the requirement is ignored, persons having a direct interest in the committee's purpose suffer injury-in-fact sufficient to confer standing to sue." 173 F.3d at 337 (quoting *Nat'l Anti-Hunger Coalition v. Executive Comm. of the President's Private Sector Survey on Cost Control*, 711 F.2d 1071, 1074 n.2 (D.C. Cir. 1983)).

The challenge mounted by the mine owners in *Cargill* was far more concrete than the allegations brought by the Association in this case. The plaintiff mine owners in *Cargill* were challenging review of a specific protocol that would control an already-planned study in which the government required them to participate. *Cargill*, 173 F.3d at 330 n.5. The data gleaned from the study would have paved the way for new regulations based on the study's findings and could also have exposed the mine owners to tort liability. *Id.* In contrast, the Association has identified no regulation or order that the Council has taken or is more likely to take as a result of the alleged underrepresentation of commercial fishing. Therefore, *Cargill* does not control this case.

7

failed to establish an injury in fact, the district court's dismissal for lack of jurisdiction was appropriate.

## III.

We also agree with the district court that the Association's suit is barred by sovereign immunity. The United States must consent to be sued, and that consent is a prerequisite to federal jurisdiction. *United States v. Navajo Nation*, 537 U.S. 488, 502 (2003). Consent may not be inferred, but must be unequivocally expressed. *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003). Even when the United States waives its sovereign immunity in part, that partial waiver must be strictly construed in favor of the Government. *Ardestani v. INS*, 502 U.S. 129, 137 (1991).[4] We review claims of sovereign immunity *de novo*. *Koehler v. United States*, 153 F.3d 263 (5th Cir. 1998).

The Association contends that § 1861(d) of the Magnuson-Stevens Act waives the United States' sovereign immunity. That section provides that "[t]he district courts of the United States shall have exclusive jurisdiction over any case or controversy arising under the provisions of this chapter." 16 U.S.C.A. § 1861(d) (West 2000). The Association argues that, because "this chapter" refers to the entire Act, the United States has waived sovereign immunity for "any case or controversy" arising under the

---

[4] Section 1855(f) of the Act does partially waive sovereign immunity by providing for judicial review of regulations promulgated pursuant to the Act. However, the Association has not attacked any regulations and does not rely on § 1855(f).

8

Act.  The Association further argues that because § 1861(d) authorizes district courts to issue various orders and to "take such actions as are in the interest of justice," the United States has unequivocally waived its sovereign immunity from suit.

We find no such unequivocal waiver in § 1861(d).  We have consistently held that a statute providing for district court jurisdiction over certain kinds of cases or controversies does not by itself waive sovereign immunity.  *See, e.g.*,  *Beall v. United States*, 336 F.3d 419, 421-22 (5th Cir. 2003); *Koehler*, 153 F.3d at 266 n.2 (5th Cir. 1998).[5]  Nor does the fact that § 1861(d) also authorizes district courts to issue certain orders and take certain actions transform this provision into an unequivocal waiver of sovereign immunity.  Empowering a district court to take certain actions is not tantamount to authorizing a civil action against the federal government.

Without an unequivocal waiver, federal courts lack jurisdiction to hear suits brought against the United States. *White Mountain*, 537 U.S. at 472 (2003).  Therefore, the district court's dismissal of this case for lack of jurisdiction was appropriate.

---

[5]  In *Beall*, for instance, the court analyzed 28 U.S.C. § 1346, which authorizes district court jurisdiction over cases involving the recovery of erroneously or illegally collected taxes.  *Beall*, 336 F.3d at 422.  The court determined that § 1346 did not by itself waive sovereign immunity.  *Id.* Only when combined with a provision allowing for a civil action to recover wrongfully collected taxes could § 1346 be considered a waiver of sovereign immunity.  *Id.*

IV.

The Association has failed to prove that any injury in fact flowed from the purported imbalance on the Council. Furthermore, sovereign immunity bars the Association's challenge to the composition of the Council.[6] We therefore AFFIRM district court's judgment dismissing the Association's suit for lack of jurisdiction.

---

[6] Because we decide this case based on standing and sovereign immunity, we decline to address the Government's alternative arguments that the Magnuson-Stevens Act authorizes no private right of action to challenge the composition of the Council and that the Act's "fair and balanced" requirement is nonjusticiable.