Raymond W. **BEALL** and Hazel A. **Beall** Plaintiffs

v.

**UNITED STATES of America** Defendant

No. CIV.A. 6:00–CV–187.

United States District Court, E.D. Texas, Tyler Division.

Aug. 13, 2004.

Teresa J. Womack, Thomas E. Redding, Redding & Associates PC., Houston, TX, for Plaintiffs.

Michael Dudley Powell, Dallas, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

Before the Court is the United States' Renewed Motion to Dismiss or for Summary Judgment and Supporting Brief (Document No. 42), Plaintiffs' Response (Document No. 50), Defendant's Reply (Document No. 52), Defendant's Supplemental Brief (Document No. 59), and Plaintiffs' Supplemental Brief in Response (Document No. 63). Based on the parties' filings and the applicable law, the Court **GRANTS** Defendant's motion.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Raymond W. Beall was a limited partner in Agri–Venture Associates and in Oasis Date Associates during the early 1980s. On July 24, 1985, Mr. Beall and his wife, Hazel A. Beall ("the Bealls") filed a joint income tax return (Form 1040) for the year 1984, whereon they included Mr. Beall's losses from the partnerships. The Bealls also filed an Application for Tentative Refund (Form 1045), whereon they carried back a net operating loss from 1984 to 1981. As a result of these filings, the Internal Revenue Service ("IRS") refunded $58,353.00 to the Bealls.

The IRS subsequently conducted an administrative review of the 1984 partnership returns. By the end of 1988, the IRS had commenced examinations of the partnerships. On or about March 21, 1989, the IRS entered the managing partner's offices and seized the books and records of the Oasis Date Associates and Agri Venture Associates partnerships. The IRS issued a Notice of Beginning of Administrative Proceeding ("NBAP") for Oasis Date in September of 1989. On April 10, 1991, the IRS issued Notices of Final Partnership Administrative Adjustment ("FPAA") to the two partnerships, wherein it denied all of the claimed deductions. The IRS released the partnership books and records fours years later, in April of 1993, at the conclusion of a grand jury investigation.

On December 20, 1996, the IRS sent to the Bealls proposals for resolving their income tax liability for the year 1984 as it related to the partnerships. On March 31, 1997, the Bealls settled their income tax liability resulting from the adjustments with the IRS. On June 27, 1997, the IRS advised the Bealls in writing of the adjustments to their tax liability for the years 1981 and 1984 resulting from the settlements. On August 4, 1997, as a result of the settlement, the IRS assessed against the Bealls additional income tax and interest for the year 1981 in the amounts of $29,978.00 and $67.525.00, respectively. In August of 1997, the Bealls completed payment on these assessments.[1]

In December 1997, the Bealls filed an Amended U.S. Individual Income Tax Re-

---

1. The additional assessments, totaling $97,503.00, were paid by applying a previously advanced $88,000.00 payment made in 1995 and a $9,503.00 overpayment of income tax from the year 1996.

turn (Form 1040X) for 1981, which requested a refund of the additional income tax the Bealls paid as a result of the settlement ($29,978.00), and a Claim for Refund and Request for Abatement (Form 843), which requested a refund of the interest the Bealls paid as a result of the settlement ($67,525.00). The asserted grounds for the initial claims for refund (Forms 1040X and 843) filed December 22, 1997, were that: 1) the additional assessments for 1981 were made after the statute of limitations for assessments had expired; 2) interest was improperly assessed under 26 U.S.C. § 6621(c); 3) the beginning date of the interest computation was erroneous; and 4) the assessments were improperly made as no notice of deficiency had been issued to the Bealls. On March 28, 1998, the IRS disallowed the Bealls' claims for refund of tax and interest for the year 1981.

On March 28, 2000, the Bealls filed suit in this Court against Defendant United States of America ("the Government") for a refund of federal income taxes pursuant to 26 U.S.C. § 7422 and 26 U.S.C. § 6230. On February 21, 2001, this Court entered an Order of Partial Dismissal for Lack of Subject Matter Jurisdiction (Document No. 23), dismissing the part of the Bealls' complaint that related to their claims for refund (Forms 1040X and 843) filed December 22, 1997, as barred by the statute of limitations. The Bealls did not appeal the Court's order. The portion of the Bealls' complaint that related to its supplemental claims, detailed below, remained before the Court.

On April 22, 1999, the Bealls filed a supplemental Amended U.S. Individual Income Tax Return (Form 1040X) and a supplemental Claim for Refund and Request for Abatement (Form 843) for 1981.

The asserted grounds for the supplemental claims for refund (Forms 1040X and 843) filed April 26, 1999, were that: 1) interest should be abated under 26 U.S.C. § 6404; and 2) a net rate of interest of zero under 26 U.S.C. § 6621(d) should be applied. Defendant again moved for dismissal in this Court on these supplemental claims, and on July 20, 2001, the Court entered its Order Granting the United States' Motion to Dismiss or for Summary Judgment (Document No. 30), which dismissed the remaining claims in the plaintiffs' complaint. The Court agreed with the Government's position that the Court did not have jurisdiction to hear Plaintiffs' claim, holding that section 6404 specifically grants jurisdiction to the Tax Court to review for abuse of discretion IRS decisions not to abate interest under 6404(e)(1). In its motion to dismiss or for summary judgment, the United States had raised alternative arguments in support of dismissal or summary judgment, but because the Court focused on the primary jurisdictional argument, it did not reach the alternative arguments. Additionally, because Plaintiffs apparently abandoned their 6221(d) interest netting claim in their responsive pleadings, the Court dismissed that claim as well.

On October 10, 2001, the Court entered Final Judgment, dismissing all of Plaintiffs' claims with prejudice. Thereafter, the Bealls filed a Notice of Appeal, appealing the July 20, 2001 Order and Final Judgment relating to the part of their claim for refund based on 26 U.S.C. § 6404(e)(1).[2] On June 27, 2003, the Fifth Circuit reversed the Court's judgment, determining that federal district courts have concurrent jurisdiction with the Tax Court to review discretionary actions of the IRS

---

**2.** In addition to not appealing the February 21, 2001 Order that relied on their December 22, 1997 claim for refund, the Bealls, likewise, did not appeal the dismissal of their § 6221(d) interest-netting claim.

under 26 U.S.C. § 6404. *Beall v. United States*, 336 F.3d 419, 431 (5th Cir.2003). The Fifth Circuit remanded the case for further proceedings, leaving the consideration of the Government's alternative arguments in support of dismissal or summary judgment to this Court to resolve. *Id.* at 430–31. Specifically, the Government had argued that even if the Court had erred in dismissing the Bealls' complaint for lack of subject matter jurisdiction, dismissal was nevertheless warranted as the interest at issue did not accrue as a result of any IRS error or delay in performing a ministerial act. *Id.*

Following remand to this Court, the United States filed the instant motion based on the alternative argument advanced above. In its Renewed Motion to Dismiss or for Summary Judgment and Supporting Brief (Document No. 42), now before the Court, the Government argues that the Court lacks jurisdiction because the time periods for, and the actions with respect to, which the Bealls request abatement of interest are not covered by 26 U.S.C. § 6404(e). Specifically, the Government claims that the time periods for which the Bealls seek abatement, from March 21, 1989, or earlier, through April 1, 1993, when the IRS raided the partnership offices and retained the partnership books and records, does not fall within the ambit of 26 U.S.C. § 6404(e), and that the criminal investigation commenced by the IRS was not a ministerial act as defined by the statute. Those issues are now properly before the Court.

## LEGAL STANDARD

Although the Government does not specifically reference the subpart of Federal Rule of Civil Procedure Rule 12(b) it is proceeding under, the Court interprets the Government's motion to be made pursuant to 12(b)(6). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff's complaint must be liberally construed in favor of the plaintiff, and all of the facts pleaded in the complaint must be taken as true. *Brown v. Nationsbank Corp.*, 188 F.3d 579, 585 (5th Cir.1999). A district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Fifth Circuit has summarized the standard of review under Rule 12(b)(6) as follows: "Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief," and "the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir.2002).

## DISCUSSION

In general, interest on an underpayment of income tax begins to accrue on the date of the return for the tax and continues to accrue, compounded daily, until payment is made. *See* 29 U.S.C. §§ 6601(a); 6622(a). However, the Internal Revenue Code provides for abatement of such interest in limited circumstances. As originally enacted, Section 6404(e)(1) of the Internal Revenue Code provides:

In the case of any assessment of interest on-

(A) any deficiency attributable in whole or in part to any error or delay by any officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act,

\* \* \* \* \* \*

 the Secretary may abate the assessment of all or any part of such interest for any period. For purposes

of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributable to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

26 U.S.C. § 6404(e)(1)(A)(1989). Pursuant to section 6404(e)(1), as originally enacted, the assessment of interest may be abated on any deficiency attributable to any error or delay by an officer or employee of the IRS in performing a ministerial act. *Id.* In 1996, with the passage of the Taxpayer Bill of Rights II,[3] Congress amended section 6404. Prior to such amendment, denial of a request for abatement of interest claims was not reviewable. With passage of the amendment, Congress vested jurisdiction in the Tax Court and provided for review of the Secretary's decision to deny interest abatement claims. *See* Pub.L.No. 104–168, § 302, 110 Stat. 1457–1458 (1996). The current section now provides:

> The Tax Court shall have jurisdiction over any action brought by a taxpayer who meets the requirements referred to in section 7430(c)(4)(A)(ii) to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion, and may order an abatement, if such action is brought within 180 days after the date of the mailing of the Secretary's final determination not to abate such interest.

26 U.S.C. § 6404(h). In *Beall*, the Fifth Circuit held that the grant of jurisdiction in section 6404(h) to the Tax Court is not exclusive, so that the federal district court has concurrent jurisdiction to review interest abatement denials. *Beall*, 336 F.3d at 431. Thus, this Court has jurisdiction to review Plaintiffs' denial of interest abatement claim, and reviews the Secretary's decision for abuse of discretion. An abuse of discretion necessarily occurs where an act can only be described as clearly improper. *Beall*, 336 F.3d at 424 (citing *United States v. O'Neil*, 709 F.2d 361, 372 n. 11 (5th Cir.1983) (equating an improper decision with an abuse of discretion)). To show an abuse of discretion, a taxpayer must prove that the Secretary or Commissioner exercised this discretion arbitrarily, capriciously, or without sound basis in fact or law. *Dadian v. Comm'r*, 2004 WL 1118291 (U.S.Tax Ct. May 19, 2004) (citing *Woodral v. Comm'r*, 112 T.C. 19, 23, 1999 WL 9947 (1999)).

### Are the time periods for which the Bealls request abatement of interest covered by 26 U.S.C. § 6406(e)?

Under the statute, as originally enacted and as amended by the Taxpayer Bill of Rights II,[4] any abatement in favor of the taxpayer is considered only after the IRS has contacted the taxpayer about their deficiency. Section 6404 specifically states that, "an error or delay shall be taken into account ... after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment." 26 U.S.C. § 6404(e)(1). Likewise, the Regulations interpreting section

---

3. *See* Pub.L. No. 104–168, 110 Stat. 1452 (codified as amended in various sections of 26 U.S.C.).

4. Section 6404, as amended, permits the abatement of interest with respect to an "unreasonable" error or delay resulting from "managerial" or ministerial acts. However, the amendment applies to interest accruing with respect to deficiencies for taxable years

beginning after July 30, 1996, so that the amendment is inapplicable in the present case. *See, e.g., Mekulsai v. Commissioner of Internal Revenue*, 2003 WL 21107687 n. 7 (U.S.Tax Ct. May 15, 2003) (acknowledging, in suit for abatement of interest for years 1982 through 1987, that for the years prior to 1996 only delays caused by ministerial acts are considered for abatement claims).

6404(e) provide that "an error or delay in performing a ministerial or managerial act will be taken into account only if it occurs after the IRS has contacted the taxpayer in writing with respect to the deficiency or payment." 26 C.F.R. 301.6404–2(a)(2) [5]; *see also Mekulsia v. Comm'r,* 2003 WL 21107687 n. 7 (U.S.Tax Ct. May 15, 2003).

The Government asserts that the time periods for which the Bealls seek abatement, from March 21, 1989, or earlier, through April 1, 1993, are not covered by section 6404. First, the Government contends that, for purposes of section 6404, the "taxpayer" who has to have been contacted with respect to an income tax deficiency for purposes of starting the time period to which the section may apply must be the partner of a partnership *individually* and not the partnership itself. Specifically, the Government argues that a partnership cannot owe income taxes so it cannot have an income tax deficiency. Thus, only Mr. Beall, as a partner, could be contacted by the IRS concerning the deficiency of the Bealls' 1981 or 1984 income taxes, and the relevant question becomes when he was first contacted by the IRS.

The Government argues that the IRS' earliest written contact with the Bealls concerning a *potential* deficiency was December 20, 1996, when the IRS sent a letter to the Bealls proposing a resolution of their income tax liability for the year 1984 as it related to the partnerships. Even then, the Government avers that the *actual* deficiency was not created until the Bealls' acceptance of the settlement offer that then caused adjustments to the Bealls' tax liability for the years 1981 and 1984.

According to the Government, the IRS' first written contact with Bealls concerning the actual deficiency was not until June 27, 1997 when it sent a Form 4549 notice of computations regarding the partnership item adjustments. Because only those errors or delays in performing a ministerial act occurring *after* the taxpayer has been contacted by the IRS are taken into account, and since that date, according to the Government, was after June 27, 1997, the Government argues that the abatement sought by the Bealls for the time period of 1989 through 1993 is simply not within the ambit of 26 U.S.C. § 6404(e).

The Bealls, on the other hand, argue that this case is not, as the Government suggests, a simple case of taxpayers who seek an abatement of interest accrued on a standard federal tax deficiency. Rather, the Bealls contend this case arises from a deficiency attributable to partnership item adjustments and is, therefore, governed and controlled by the partnership audit and litigation procedures enacted under the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"). Pub.L. No. 97–248, 96 Stat. 324, codified at 26 U.S.C. §§ 6221–33. The Bealls contend that the interaction between TEFRA and the "first written contact" from the IRS related to a taxpayers' deficiency for purposes of section 6404(e) is a matter of first impression before this Court.

Through the enactment of TEFRA, Congress established a statutory framework for the administrative and judicial review of partnership returns. *See* I.R.C. §§ 6221–33. Under TEFRA, the IRS may begin a partnership-level audit through a unified proceeding at the partnership level

---

**5.** Section 301.6404–2(a)(2), in its final version, was issued December 18, 1998, and generally applies to interest accruing on deficiencies for taxable years beginning after July 30, 1996. See 26 C.F.R. § 301.6404–2(d)(1). However, the temporary regulation, effective for taxable years beginning after December 31, 1978, but before July 30, 1996, contained identical language, except that it did not mention managerial acts. *See* 26 C.F.R. § 301.6404–2T(a)(2).

to determine the tax treatment of "partnership items,"[6] instead of initiating separate and individualized proceedings for each partner. I.R.C. § 6221; see also Slovacek v. United States, 36 Fed. Cl. 250, 254 (1996) (stating that "the principle purpose of TEFRA is to provide consistency and reduce duplication in the treatment of partnership items by requiring that they be determined in a single unified proceeding at the partnership, rather than the partner, level."). Section 6223 gives the notice procedures related to any TEFRA proceedings. I.R.C. § 6223. Under TEFRA procedures, the IRS must send notice of the beginning of an administrative proceeding ("NBAP") and inform the partnership of the impending audit of a partnership item. Id. The IRS must give notice to the designated tax matters partner ("TMP") and other partners entitled to notice ("notice partners") under section 6223(a).[7] Neither of the Bealls' partnerships exceeded 100 partners; therefore, they were notice partners in each. The NBAP in this case was issued September 19, 1989.

After conducting an audit of the partnership, the IRS may conclude that adjustments are necessary, and, under the TEFRA procedures, the IRS must then issue a Final Partnership Administrative Adjustment ("FPAA"), which sets forth a determination of partnership item tax adjustments. I.R.C. § 6223(a)(2). The IRS must send notice of the FPAA to each partner eligible to receive notice of the beginning the audit, i.e., the TMP and other notice partners. I.R.C. § 6223(a). The FPAAs in this case were sent to the partnerships on April 10, 1991.

The Government argues that the statute at hand must be strictly interpreted and that taxpayers must be contacted regarding "dollar amount" or "actual," not just "potential" deficiencies for purposes of interest abatement. As the Government posits, the fact that a partnership receives an NBAP does not mean that a partnership will actually receive an adjustment that results in a liability or deficiency. Until such time as an FPAA is published, it argues, such liability or deficiency re-

---

6. For purposes of the unified partnership audit and review procedures, a partnership item is any item that must be taken into account for the partnership's tax year, to the extent the regulations provide the item is more appropriately determined at the partnership level than at the partner level. I.R.C. § 6231(a)(3). The applicability of the unified partnership procedures is a partnership item. Field Service Advice 1999–848, Vaughn No. 264. Items of income, gain, loss (such as net operating loss), and deductions or credits are examples of partnership items, as well as any item that affects the computation of partnership taxable income, such as the method of accounting, the partnership's inventory method, the characterization of partnership property, etc. Id.; Field Service Advice 1999–1075, Vaughn No. 522; Reg. § 301.6231(a)(3)–1(a)(1)(I); Reg. § 301.6231(a)(3)–1(b).

7. The IRS must send notice of the beginning of a partnership-level administrative pro-

ceeding (NBAP) and of the final partnership administrative adjustment (FPAA) to each partner whose name and address have been furnished to the IRS at least 30 days before it mails the notice to the tax matters partner (TMP). I.R.C. § 6223(a). This identification information is provided to the IRS on the partnership tax return, as well as by direct submissions to the IRS. Reg. § 301.622(c)–1. Partners entitled to receive notice are called "notice partners." I.R.C. § 6231(a)(8). In partnerships with more than one hundred partners, the Service must only give notice regarding the initiation of partnership proceedings or FPAA's to partners with more than a 1% interest in the partnership's profits. I.R.C. § 6223(b)(1). A group of partners in the aggregate with a 5% or more interest in partnership profits may also designate a notice partner. I.R.C. § 6223(b)(2). The IRS is authorized to give notice to these partners by notifying the TMP. I.R.C. § 6231(e).

mains only a possibility. According to the Government, the first arguable notice of any partnership item tax adjustments which might give rise to liabilities or deficiencies did not occur until April 10, 1991, when the FPAAs were sent to the TMP for the two partnerships in which Mr. Beall was a partner. Because the FPAA did not issue until April 10, 1991, and because the statute only allows abatement for errors and delays *after* written notice of such deficiency, the Government argues that Plaintiffs' claims for the period from March 21, 1989, or earlier, to April 10, 1991, do not fall within section 6404 of the statute.[8]

The Bealls, on the other hand, argue the statute is clear that once the IRS *commences* an examination, an error or delay by an IRS officer or employee in performing a ministerial act will give rise to a claim for abatement of interest on any resulting deficiency where the interest is attributable in whole or in part to that error or delay. Plaintiffs submit that the notice of beginning of administrative proceedings ("NBAP"s) were sent to the partnerships as early as September, 1989.

 While the Government claims that any notice must be sent to the Bealls personally, not through the partnership, the Court does not take so narrow a view. Because the partnerships were in existence in 1984, after TEFRA was enacted, the provisions of TEFRA apply to this case, so that the TEFRA notice provisions apply. In TEFRA cases, the date of the NBAP has been held to be the appropriate date of notice for interest abatement claims. *See, e.g., Dadian v. Comm'r,* 2004 WL 1118291 (U.S.Tax Ct. May 19, 2004) (stating that the date the NBAP was sent should be considered the date of the IRS first written contact with the petitioners

for purposes of section 6404(e)); *Mekulsia v. Comm'r,* 2003 WL 21107687 n. 9–10 (U.S.Tax Ct. May 15, 2003) (finding that the first contact with petitioners, for purposes of section 6404(e) was the date that respondent sent the NBAP to the tax matters partner). However, taking the Bealls' submission as true that September, 1989 is the date the NBAP issued, then any claims for abatement prior to this time cannot be upheld. Because only those errors or delays occurring *after* the taxpayer has been contacted in writing can be taken into account, any errors or delays prior to September, 1989 could not be considered for abatement. Thus, for the claimed period from March 1989, or earlier, to September 1989, the Government is correct that the Bealls' claim does not fall within the ambit of section 6404(e).

The period beyond September 1989 to April 1993, the surviving portion for which the Bealls seek the abatement of interest, is likewise problematic for the Bealls, albeit for different reasons. Assuming *arguendo* that the Bealls were first contacted September 1989 regarding a deficiency, by receipt of the NBAP, the Bealls must show that an error or delay by the IRS in performing a ministerial act where the interest on their deficiency is attributable in whole or part to that error or delay. This they cannot do as a matter of law.

### Was the criminal investigation commenced by the IRS a ministerial act as defined by the statute?

In 1996, Congress amended the statute by adding the word "unreasonable" before "error" and the words "or managerial" after "ministerial." Pub.L. No. 104–168, § 301(a), 110 Stat. 1452, 1457 (1996). The amendments apply to interest accruing with respect to deficiencies or payments

---

8. The Government further contends that Plaintiffs did not receive written notice of an "actual" deficiency amount until they re-

ceived a Form 4549 notice of computations regarding dollar amount partnership item adjustments.

for taxable years beginning after July 30, 1996. *See id.,* § 30(c). Since the years in controversy date back to 1981 and 1984, the Government contends, and the Bealls do not dispute, that the Bealls are therefore limited to asserting grounds for recovery based on any error or delay by an IRS officer or employee in performing only *ministerial,* and not managerial, acts.

The Regulations interpreting section 6404(e) define the term "ministerial act" as "a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place." 26 C.F.R. 301.6404–2(b)(2).[9] In contrast, acts that either are "managerial or arise out of general administrative decisions are not ministerial." *Mekulsia v. Commissioner of Internal Revenue,* 2003 WL 21107687 (U.S.Tax Ct. May 15, 2003) (citing section 301.6231(c)–5T, Temporary Proced. & Admin. Regs.).

The United States Tax Court has held that the commencement of a criminal tax investigation of a partner in a TEFRA partnership does not necessarily merit the abatement of interest. *See Mekulsia v. Comm'r,* 2003 WL 21107687 (U.S.Tax Ct. May 15, 2003); *see also Hawksley v. Comm'r,* 2000 WL 1706715 (U.S.Tax Ct.2000) (holding that seizure of taxpayer's records in conjunction with an arrest pursuant to grand jury felony indictment, of taxpayer's purported representative, was not a "ministerial act," error or delay in which could support abatement of interest). Furthermore, the mere passage of time does not establish error or delay in performing a ministerial act. *Hawksley v.*

*Comm'r,* 2000 WL 1706715 (U.S.Tax Ct.2000).

In its renewed motion to dismiss, the Government argues that dismissal is warranted in this case because the interest at issue did not accrue as a result of any IRS error or delay in performing a ministerial act. Specifically, the Government contends that the actions of the IRS about which the Bealls complain, a criminal investigation of partners Behrens and Wright and the seizure of partnership records in connection therewith, and the suspension of civil proceedings during the criminal investigation, are exercises of judgment or discretion and not simply procedural or mechanical activities. Accordingly, the IRS argues that such actions cannot be ministerial within the meaning of Section 6404(e) and, therefore, cannot serve as a basis for abatement under the code. This issue was raised at the Fifth Circuit, and the appellate court left the issue to be decided by this Court.

In their original complaint, Plaintiffs allege that the IRS invaded the general partner's office and served criminal subpoenas and seized the partnership records on March 21, 1989. Pls.' Orig. Compl., ¶ P.(ii). Plaintiffs further allege that on April 1, 1993, the IRS notified the general partners that the criminal investigation had been abandoned and returned the records, some of which were missing and in total disarray. *Id.,* ¶ P.(iii). Plaintiffs claim that "[b]eginning with the commencement of the IRS' criminal investigation of Mr. Behrens and Mr. Wright and the seizure of the partnership records and ending with the termination of the criminal investigation and the return of those rec-

9. Section 301.6404–2(b)(2), in its final version, was issued December 18, 1998, and generally applies to interest accruing on deficiencies for taxable years beginning after July 30, 1996. The temporary regulations, howev-er, effective for taxable years beginning after December 31, 1978, but before July 30, 1996, contain the same definition of ministerial act. *See* 26 C.F.R. § 301.6404–2T(b)(1).

ords, the suspension of the civil proceedings during that time period constituted an unreasonable delay in the proceedings due to a managerial or ministerial act." *Id.,* ¶ P.(i). Plaintiffs further claim that the ministerial or managerial acts of the "erroneous and unreasonable conduct of the criminal investigation of the general partners, seizure, disorganization and loss of partnership records in the course of that investigation," caused the interest to accrue on their tax deficiencies. *Id.,* ¶ P.(vi). Accordingly, Plaintiffs claim that interest should be suspended from March 21, 1989, if not earlier, to April 1, 1993. *Id.,* ¶¶ P.(iv), P.(v).

In their response to the Government's motion to dismiss, the Bealls concede that the IRS's decision not to suspend civil proceedings pending resolution of criminal proceedings is not *per se* an error or delay in the performing of a ministerial act. Yet, the Bealls argue in their response that interest that accrued on their deficiencies was attributable in whole or in part to other actions: (i) IRS errors in performing ministerial acts leading up to the criminal investigations and the seizure of the partnerships' books and records; (ii) the improper seizure of the books and records; (iii) errors in the seizure and the failure to return the partnerships' books and records; and (iv) the delays that resulted from the IRS's disorganization and loss of partnership books and records while in the IRS's position: However, the Court has already determined that any actions preceding the September, 1989 NBAP notice are not within the ambit of section 6404. Therefore, any claims relating to IRS errors in performing ministerial acts leading up to the criminal investigations and the seizure of the partnerships books and records, which occurred in March, 1989, the improper seizure of the books and records, and errors in the seizure of the partnerships' books and records cannot be sustained. The only actions that the Bealls

could conceivably attribute to IRS ministerial acts are errors made in the course of the criminal investigation, the disorganization and loss of partnerships' books and records in the course of the investigation, and the failure to return the partnerships' books and records following that investigation.

■ Even taking Plaintiffs' allegations as true, that the IRS in fact committed errors or was dilatory in the commencement of the criminal investigation and proceeding, it cannot be argued that the actual criminal investigation of two partners was a "procedural or mechanical" act that involved no discretion or exercise of judgment on the part of the IRS. The fact that errors may have been committed in the process does not place the investigation into the ministerial realm that Plaintiffs seek. More troubling to the Court is the Bealls' claim that the IRS committed ministerial errors in the disorganization, disarray and loss of the partnerships' books and records following the investigation. However, according to the Regulations interpreting section 6404, the loss of the taxpayer's records is a managerial act: "Managerial act means an administrative act that occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records or the exercise of judgment or discretion ..." 26 C.F.R. § 301.6404–2(b)(1) & Example 6 (explaining that the act of misplacing a case file is a managerial act). Thus, the alleged actions by the IRS in the instant case cannot be held to be "ministerial" as that term is defined by the regulations interpreting the Tax Code so that Plaintiffs are not entitled to abatement of interest. While section 6404, as amended, now allows abatement of interest for ministerial and managerial acts, the Bealls' claim does not fall within the new provision. The Bealls have already agreed that, because the tax year at issue dates back to 1981, interest can only

be abated for ministerial acts. Accordingly, because the Bealls' claims do not fall within the ambit of section 6404(e), it was not an abuse of discretion to deny the claim for abatement of interest.

## CONCLUSION

"When Congress enacted section 6404(e), it did not intend the provision to be used routinely to avoid payment of interest. Rather, Congress intended abatement of interest to be used sparingly, only where failure to do so 'would be widely perceived as grossly unfair.'" *Mekulsia v. Comm'r*, 2003 WL 21107687 (U.S.Tax Ct. May 15, 2003) (citations omitted). The Bealls' pleaded claims do not state a claim for relief because the act for which they are claiming abatement of interest cannot be sustained as a matter of law. Because the Bealls' claim does not fall within the clear parameters of section 6404, there is no basis in law for their claims. This is not a case where it can be said the IRS's decision to deny the Bealls' claim for abatement of interest was an exercise of discretion that was arbitrary, capricious, or without sound basis in fact or law. The Bealls' claims, therefore, are hereby DISMISSED.