T.C. Memo. 2007-204

UNITED STATES TAX COURT

RALPH HOWELL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13117-05.                    Filed July 25, 2007.

<u>Nicholas E. Christin</u>, for petitioner.

<u>Timothy Maher</u>, for respondent.


                     MEMORANDUM OPINION

     VASQUEZ, <u>Judge</u>:  Petitioner submitted to the Internal

Revenue Service (IRS) a request for abatement of interest

relating to his 1984, 1985, and 1986 income tax liabilities.

Respondent denied the request.  The issue for our determination

is whether respondent abused his discretion under section 6404 by

failing to abate assessments of interest relating to petitioner's 1984, 1985, and 1986 taxable years.[1]

## Background

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time he filed his petition, petitioner resided in Florida.

## I. AMCOR Partnership Proceedings

Petitioner invested in separate tax shelter partnerships sponsored and operated by Amcor Capital, Inc. (AMCOR), in each of the years 1984, 1985, and 1986. Petitioner filed a Form 1040, U.S. Individual Income Tax Return, for each of the 3 years, reporting substantial losses attributable to his AMCOR partnership investments in each year.[2] Respondent accepted petitioner's 1984, 1985, and 1986 returns as filed.

During the 1980s and 1990s, respondent pursued extensive civil and criminal investigations into the operation of AMCOR and

---

[1] All section references are to the Internal Revenue Code in effect for the years in issue unless otherwise indicated, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] After receiving an extension of time to file, petitioner timely filed his 1984 return. Petitioner filed his 1985 and 1986 returns a few days after the end of extension periods respondent granted.

its related partnerships.[3]  In March of 1989, in connection with respondent's criminal investigation into AMCOR's operations and pursuant to a search warrant, respondent entered an AMCOR office and seized materials relating to the operation of AMCOR's tax shelter partnerships.  Respondent did not return the materials he seized from the search until 1993.

The United States never brought criminal charges against AMCOR or its related partnerships.  However, between 1990 and 1991, respondent issued separate notices of final partnership administrative adjustment (FPAAs) to the tax matters partners (TMPs) of several AMCOR partnerships including those partnerships in which petitioner invested.  Respondent determined that the AMCOR partnerships had claimed several deductions to which they were not entitled, resulting in millions of dollars of tax adjustments.

The TMPs of several AMCOR partnerships, including the partnerships in which petitioner invested, petitioned this Court for review of the adjustments made in the FPAAs.  Those cases were litigated together, and decisions in the cases were entered on July 19, 2001.  Those decisions became final on or about October 17, 2001.  The decisions that pertain to the AMCOR partnerships in which petitioner invested include, inter alia,

---

[3]  For some of the history of AMCOR and the investigation into its operations, see, for example, Crop Associates-1986 v. Commissioner, T.C. Memo. 2000-216.

- 4 -

substantial reductions in claimed deductions.  The parties to
those cases stipulated that the partnerships entered into
transactions that lacked economic substance and created
substantial distortions of partnership income.

II.  <u>Respondent's Correspondence With Petitioner</u>

In a letter dated December 16, 1996, respondent notified
petitioner of a discrepancy between the amount of loss reported
on petitioner's Schedule K-1, Partner's Share of Income, Credits,
Deductions, etc., for Agri-Venture Fund, an AMCOR partnership in
which petitioner had invested during 1985, and the amount
petitioner reported on his return for 1985.  Petitioner responded
by a letter dated December 31, 1996, in which he advised
respondent that "[to] the best of my knowledge, the statute of
limitation has expired as to all personal, partnership or other
items reported on my 1985 tax return".

Respondent replied to petitioner in a letter dated January
20, 1997.  As noted <u>supra</u>, respondent had previously issued FPAAs
to the TMPs of all of the AMCOR partnerships in which petitioner
participated, and they had already petitioned this Court for
review of the adjustments made therein.  In relevant part, the
letter dated January 20, 1997, read as follows:

> Agri-Venture Fund is in Appeals at the present time.
> Since the examination is not completed, the statute
> remains open per Internal Revenue Code 6221.  The tax
> treatment of any partnership item shall be determined
> at the partnership level.  Therefore, the statute on

your return remains open for any adjustment resulting from the examination of Agri-Venture Fund.

By three letters dated June 25, 2002, respondent issued Forms 4549A, Income Tax Examination Changes, to petitioner concerning his 1984, 1985, and 1986 tax years. The Forms 4549A showed increases in tax of $12,960.52 for 1984, $20,249.02 for 1985, and $15,109.01 for 1986. The adjustments shown in the Forms 4549A all resulted from differences between the amounts of AMCOR partnership losses petitioner reported on his 1984, 1985, and 1986 tax returns and the amounts of losses ultimately allowed to those partnerships at the close of partnership-level litigation in this Court.

On or about July 15, 2002, petitioner mailed to respondent three executed Forms 4549A and checks for the amounts of the increases in tax shown on the Forms 4549A. On July 22, 2002, respondent posted petitioner's payments towards his deficiencies and assessed additional taxes in the amounts paid. Respondent simultaneously assessed interest for each year.

On November 1, 2002, petitioner submitted three Forms 843, Claim for Refund and Request for Abatement, pertaining to his 1984, 1985, and 1986 taxable years. On his Forms 843, petitioner requested interest abatement with regard to interest that accrued on his 1984, 1985, and 1986 deficiencies during and after May 1988.

By separate letters dated January 17, 2003, respondent
denied petitioner's requests for interest abatement.[4]  Respondent
concluded, inter alia, that petitioner did not meet the
requirements of section 6404(e) and that petitioner could not
challenge the extensions of the period of limitations on
assessment of AMCOR partnership items in his individual capacity.

On May 4, 2005, respondent issued a letter entitled "Full
Disallowance--Final Determination" to petitioner denying
petitioner's request for interest abatement.  In relevant part,
that letter stated:

> We regret that our final determination is to deny your
> request for an abatement of interest.  We had to deny
> your request for the following reason(s):
>
> - We did not find any errors or delays on our
>   part that merit the abatement of interest in
>   our review of available records and other
>   information for the period requested.

On July 15, 2005, petitioner petitioned the Court for review
of respondent's determination.

OPINION

I.  <u>Section 6404(e)</u>

Pursuant to section 6404(e)(1) as it applies in this case,
the Commissioner may abate the assessment of interest in two

---

[4]  The parties did not submit a copy of respondent's Jan.
17, 2003, letter disallowing petitioner's request for interest
abatement with regard to his 1986 deficiency, but the parties
stipulated that the contents of that letter were identical in all
respects to the letters disallowing petitioner's requests for
interest abatement with regard to his 1984 and 1985 deficiencies.

situations: (1) When a deficiency is attributable to an error or delay by an officer or employee of the IRS in performing a ministerial act, or (2) when interest is assessed on any payment of certain taxes (including income tax) to the extent that an error or delay in such payment is attributable to an officer or employee of the IRS being erroneous or dilatory in performing a ministerial act.[5] An error or delay by an officer or employee of the IRS shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the IRS has contacted the taxpayer in writing with respect to such deficiency or payment. Id.

A "ministerial act" is a procedural or mechanical act that does not involve the exercise of judgment or discretion and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place. Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).[6] A

_____

[5] In 1996, sec. 6404(e) was amended by the Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301(a)(1) and (2), 110 Stat. 1457, to permit the Commissioner to abate the assessment of interest attributable to IRS errors or delays in performing both managerial and ministerial acts. The amendment applies to interest accruing with respect to deficiencies for taxable years beginning after July 30, 1996, and therefore does not apply to the matter before us.

[6] Final regulations under sec. 6404 were issued on Dec. 18, 1998, and contain the same definition of a ministerial act as do the temporary regulations. See sec. 301.6404-2(b)(2), Proced. &
(continued...)

decision concerning the proper application of Federal tax law (or other Federal or state law) is not a ministerial act.  Id.

Even where errors or delays are present, the Commissioner's decision to abate interest remains discretionary.  See sec. 6404(e)(1); Mekulsia v. Commissioner, T.C. Memo. 2003-138, affd. 389 F.3d 601 (6th Cir. 2004).  When Congress enacted section 6404(e), it did not intend the provision to be used routinely to avoid payment of interest.  Rather, Congress intended abatement of interest to be used only where failure to do so "would be widely perceived as grossly unfair."  H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208.

## II.  Standard of Review and Burden of Proof

When reviewing the Commissioner's determination not to abate interest, we apply an abuse of discretion standard.  See sec. 6404; Camerato v. Commissioner, T.C. Memo. 2002-28.  The taxpayer bears the burden of proof with respect to establishing an abuse of discretion.  See Rule 142(a).  In order to prevail, the taxpayer must establish that in not abating interest the Commissioner exercised his discretion arbitrarily, capriciously,

---

[6](...continued)
Admin. Regs.  The final regulations generally apply to interest accruing on deficiencies or payments of tax described in sec. 6212(a) for taxable years beginning after July 30, 1996, and do not apply to the years at issue in this case.  See sec. 301.6404-2(d)(1), Proced. & Admin. Regs.

or without sound basis in fact or law.  Lee v. Commissioner, 113 T.C. 145, 149 (1999); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

III. Analysis

Petitioner alleges that respondent engaged in several forms of ministerial error or delay.

Petitioner first alleges that during respondent's criminal investigation of AMCOR respondent "was in full possession of the records necessary to issue a tax deficiency, but failed to do so."

Regardless of whether respondent possessed the records required to determine petitioner's deficiencies during respondent's criminal investigation of AMCOR, the long and winding procedural history of the AMCOR audit and litigation prevented respondent from making that determination for several years.  Pursuant to section 6221, the proper tax treatment of petitioner's AMCOR-related items was required to be determined at the partnership level.  Pursuant to section 6225(a), respondent was prohibited from assessing or collecting petitioner's deficiencies until the decisions in the AMCOR partnership cases in this Court became final.  As noted supra, that did not occur until October 17, 2001, long after respondent returned the AMCOR records in 1993.  Petitioner has therefore failed to establish that respondent's delay in assessing petitioner's deficiencies

until the close of AMCOR-related partnership litigation constitutes error or delay in performing a ministerial act.[7]

Petitioner also alleges that the imposition of interest is grossly unfair because the amounts of interest assessed now greatly exceed the amounts of the deficiencies.  As we have noted on several occasions, the mere passage of time does not establish error or delay in performing a ministerial act.  Lee v. Commissioner, supra at 151; Mekulsia v. Commissioner, supra; Hawksley v. Commissioner, T.C. Memo. 2000-354; Cosgriff v. Commissioner, T.C. Memo. 2000-241.

Petitioner further alleges that the information regarding the examination status of Agri-Venture Fund contained in respondent's letter of January 20, 1997, was erroneous and its inclusion constituted ministerial error.[8]

_____

[7]  In Crop Associates-1986 v. Commissioner, supra, in answer to the TMP's allegations that respondent had delayed the litigation of AMCOR partnership cases, we concluded that "Blame (if any) for the time it took to proceed to the present posture cannot be laid only at the feet of respondent."  Indeed, it appears that the litigation was protracted by, among other things, sundry claims advanced on behalf of the AMCOR partnerships, none of which was deemed persuasive.  See Crop Associates-1986 v. Commissioner, 113 T.C. 198 (1999); Agri-Cal Venture Associates v. Commissioner, T.C. Memo. 2000-271; Crop Associates-1986 v. Commissioner, T.C. Memo. 2000-216.

[8]  In his second amended petition, petitioner alleges that an additional letter from respondent dated June 27, 2000, contained similar erroneous information.  Petitioner attached a copy of that letter to his second amended petition, but no copy of the letter was entered into evidence.  Documentary material attached to a petition is not evidence.  Greengard v.
                                          (continued...)

From the record before us, it appears that respondent's statement that "Agri-Venture Fund is in Appeals at the present time" may have been incorrect.  As respondent notes, although respondent had previously issued an FPAA to the TMP of Agri-Venture Fund for the year at issue, it is possible that a settlement offer in the case was being considered at the Appeals Office level.  Nothing in the record indicates that this is not so.  In any event, we conclude that petitioner has not demonstrated that the accrual of any interest is attributable to the above statement in respondent's letter of January 20, 1997, even if we assume that respondent's statement was in error.

In order to qualify for relief pursuant to section 6404(e), a taxpayer must demonstrate a direct link between the error or delay and a specific period during which interest accrued. Guerrero v. Commissioner, T.C. Memo. 2006-201; Braun v. Commissioner, T.C. Memo. 2005-221.  Respondent's error has not been shown to have caused the accrual of any interest.  Although the case of Agri-Venture Fund may not have been "in Appeals" when

---

<sup>8</sup>(...continued)
Commissioner, 29 F.2d 502 (7th Cir. 1928), affg. 8 B.T.A. 734 (1927); Pallottini v. Commissioner, T.C. Memo. 1986-530. Moreover, in a fully stipulated case such as the matter before us, we consider those matters not contained in the stipulations to be without support in the record.  Miyamoto v. Commissioner, T.C. Memo. 1986-313.  We therefore do not consider the contents of the letter attached to petitioner's second amended petition. We note, however, that consideration of the letter would not alter our conclusions in the matter before us.

respondent issued the letter of January 20, 1997, the case was before this Court when the letter was issued. As the letter correctly noted, the period of limitations on assessment of deficiencies in petitioner's taxes was consequently suspended. See sec. 6229(d)(1). Petitioner has not shown that respondent's letter of January 20, 1997, caused any accrual of interest that is attributable to error or delay in performing a ministerial act.

Petitioner further contends that the error contained in respondent's letter of January 20, 1997, provides an independent basis for the abatement of interest pursuant to section 6404(f). Generally speaking, section 6404(f) allows for the abatement of penalties and additions to tax, and not of assessments of interest.[9] See sec. 301.6404-3(c)(2), Proced. & Admin. Regs. Petitioner's argument regarding section 6404(f) is therefore unfounded.

Finally, petitioner argues that respondent lost some of the documents that respondent seized in March of 1989 from AMCOR's office and that respondent returned other documents in a state of disarray. Petitioner appears to argue that respondent is collaterally estopped from denying such facts pursuant to

---

[9] Sec. 6404(f) does allow for abatement of interest imposed with respect to any penalty or addition to tax. See sec. 301.6404-3(c)(2), Proced. & Admin. Regs. Such interest is not at issue in the matter before us.

statements in the U.S. Court of Appeals for the Fifth Circuit's opinion in the case of another AMCOR investor, Beall v. United States, 467 F.3d 864 (5th Cir. 2006) affg. 335 F. Supp. 2d 743, (E.D. Tex. 2004).[10]  The relevant portion of the Court of Appeals' opinion reads as follows:  "The IRS did not return the partnerships' books and records until 1993, and when the IRS did return them, some had been lost and the remainder were in disarray."  Id. at 866.

The doctrine of issue preclusion, or collateral estoppel, provides that once an issue of fact or law is "'actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'"  Monahan v. Commissioner, 109 T.C. 235, 240 (1997) (quoting Montana v. United States, 440 U.S. 147, 153 (1979)). The following five conditions must be satisfied before application of issue preclusion in the context of a factual dispute:  (1) The issue in the second suit must be identical in all respects with the one decided in the first suit; (2) there must be a final judgment rendered by a court of competent jurisdiction; (3) collateral estoppel may be invoked against

---

[10]  Petitioner does not appear to request that the Court take judicial notice of the "facts" in Beall v. United States, 467 F.3d 864 (5th Cir. 2006).  We note, however, that taking judicial notice would be inappropriate in this matter.  See Abelein v. Commissioner, T.C. Memo. 2007-24.

parties and their privies to the prior judgment; (4) the parties must actually have litigated the issues and the resolution of these issues must have been essential to the prior decision; and (5) the controlling facts and applicable legal rules must remain unchanged from those in the prior litigation. Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), affd. 904 F.2d 525 (9th Cir. 1990).

The statement in the Court of Appeals' opinion in Beall does not establish that respondent failed to return documents or that respondent returned other documents in disarray. First, petitioner was not a party to the dispute in Beall. Second, as respondent correctly notes, the Court of Appeals' opinion in Beall related to the review of a District Court's decision to grant a motion of respondent's that was treated as a motion to dismiss for failure to state a claim upon which relief could be granted pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure. Pursuant to that rule:

> "a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief," and "the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff."

Beall v. United States, 335 F. Supp. 2d at 747 (quoting Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002)) (internal citations removed). Applying this standard, both the District Court and the Court of Appeals were required to accept

the plaintiffs' factual allegations as true regardless of their veracity. Consequently, the question of whether respondent's agents or employees lost some documents and returned others in disarray was not actually litigated in <u>Beall</u>, and collateral estoppel does not apply to the factual assumptions in <u>Beall</u>. The parties have not stipulated the relevant factual assumptions in <u>Beall</u>. Petitioner has therefore not established that respondent lost some AMCOR records and returned others in disarray in pursuit of respondent's criminal investigation of AMCOR.

We conclude that respondent's denial of petitioner's request for interest abatement was not arbitrary, capricious, or without sound basis in fact or law. In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.